### Nichols *against* Gates and others.

A grant by the General Assembly to *A.* and *B.* without the words *heirs* or *assigns*, of the exclusive privilege of running a line of stages on a certain road, during the pleasure of the General Assembly, is a grant to them personally, and terminates at the death of the grantees. And where a person claiming as assignee of such grant, by virtue of an assignment from the administrators of one of the grantees after their death, continued the line for nearly twenty years, without interruption, or the interference of any other line, it was held that these facts furnished no evidence of the existence of the grant, or of an exclusive right.

THIS was an action of debt to recover the double value of six stage-waggons and fifty horses. The declaration stated, that in *October* 1784, the General Assembly of this state passed a resolve, granting licence to *Tallmadge Hall* and *Jacob Brown* to set up and drive all necessary stage-waggons, and to carry travellers therein, with their baggage and effects, from the city of *Hartford* to *Byram* river, during the pleasure of the General Assembly, and declaring that no other person should, in the mean time, presume to set up or drive any stage-waggon on the same road, without the special licence of the General Assembly, upon pain of forfeiting every such waggon and the horses used therein, or double the value thereof, to any person who should sue for the same; that *Hall* and *Brown* from the time of the grant to the year 1790, and the plaintiff with one *Lovejoy*, as their

assignees, ever since, have constantly kept and maintained on said road all necessary stage-waggons to carry travellers, their baggage and effects ; and that the defendants, in *August* 1813, set up and drove the stage-waggons and horses above mentioned on the road between *New-Haven* and *Byram* river.

*New-Haven,* June, 1815.

Nichols *v.* Gates.

The cause was tried at *New-Haven,* at an adjourned term in *February* 1815, before *Trumbull, Baldwin* and *Ingersoll,* Js.

On the trial, the plaintiff introduced the resolve stated in the declaration, which was as follows : " At a General Assembly of the state of *Connecticut* holden at *New-Haven* in said state, on the second *Thursday* of *October, Anno Domini* 1784. Upon the memorial of *Tallmadge Hall* and *Jacob Brown,* shewing, that they have, at great expense, furnished themselves with stage-waggons and horses for carrying travellers with their baggage and effects from the city of *Hartford* to *Byram* river ; praying for an exclusive right to carry passengers, &c., as per memorial, &c. *Resolved by this Assembly,* that the memorialists shall have, and licence is hereby granted to them, to erect, set up and drive all necessary stage-waggons or carriages, and to carry travellers therein, with their baggage and effects, from the city of *Hartford* to *Byram* river in this state, during the pleasure of this Assembly ; and that in the meantime no other person or persons whosoever shall presume to erect, set up, or drive any stage-waggon, waggons, or other carriage, for any of the purposes aforesaid, on the same roads, without the special licence of this Assembly, upon pain of forfeiting all such waggon, waggons, or carriages, and the horse or horses used therein, or double the value thereof, to any one who shall sue for and recover the same." The plaintiff then introduced evidence to shew, that *Hall* and *Brown,* immediately after the passing of this resolve, established a line of stages from *Hartford* to *Byram* river, and continued constantly to run the same until their death ; that upon the death of *Brown,* his widow, who was one of the administrators, continued to run the same line of stages until the 15th of *February* 1794, when the administrators made an assignment of all the privilege they had to the plaintiff, who was then a driver on the road ; but no order of the court of probate respecting the sale of such privilege was shewn ; that the plaintiff, in connexion with *Lovejoy,* has ever since, with-

out any interruption, continued the line from *New-Haven* to *Byram* river; and that in *October* 1795, after the death of *Hall* and *Brown,* the General Assembly revoked said grant so far as it respects the privilege from *Hartford* to *New-Haven.* The plaintiff also introduced evidence that he and *Lovejoy* had contined in the peaceable and uninterrupted use and occupation of said privilege from the death of *Hall* and *Brown*; that no person, until the injury complained of, ever interfered with or molested them in the enjoyment thereof; and that the public had been well accommodated by them. No assignment or transfer from *Hall* was shewn. The defendants, on their part, claimed and attempted to prove, that the plaintiff run his stage between *New-Haven* and *Stratford* river only, and had no other interest in the line. The court thereupon charged the jury as follows: " In this case, the plaintiff, in order to prove his declaration, produced a resolve of the General Assembly on the memorial of *Tallmadge Hall* and *Jacob Brown,* &c. [reciting its provisions.] It was agreed, that *Hall* and *Brown* have been long since deceased, and previous to the acts of the defendants complained of in the declaration. To prove that the right to the benefit of the grant and licence was vested in the plaintiff, he produced an assignment thereof to him from the administrators of *Brown.* It was thereupon objected by the defendants, that the original licence to *Hall* and *Brown* was merely a licence to them personally, and that it ceased on their death. The court are of opinion that this licence was merely of the right to them personally; that the right ceased on their death; and that, of course, the administrators of *Brown* had no title, and their assignment to the plaintiff conveyed none. No other title is claimed or attempted to be proved by the plaintiff. But the plaintiff claims, that he has run his stage for twenty years without interruption, and has thereby acquired a right by possession to that part of the road between *New-Haven* and *Stratford* river; and that a line of stages has, during that period, been kept up through the whole of the road specified in the grant. On this point, the court are of opinion that no exclusive right to run stages on a road can be gained by use and possession only. The decision of these questions of law puts an end to the case; and you will, of course, find a verdict for the defendants." The jury found accordingly; and the plaintiff moved for a new trial on the ground of a misdirection.

The questions arising on this motion were reserved for the advice of the nine Judges.

*N. Smith* and *Staples,* in support of the motion, contended, 1. That the grant to *Hall* and *Brown* was not a mere personal grant. This they argued from the situation of the country, and the hazard attending the experiment, at the time the grant was made ; from the object which the legislature obviously had in view ; from the words of the grant, making it determinable only at "the pleasure of the General Assembly ;" and from the act of the legislature in *October* 1795, after the death of *Hall* and *Brown,* revoking the grant as to a part of the line, and thereby virtually declaring that the grant as to the residue was still subsisting.

2. That the assignment to *Nichols,* being made by the administrators of *Brown,* the surviving grantee, to a man who was in the actual enjoyment of the privilege, was sufficient for the purposes of this action.

3. That the fact of the grantees and their assignee having claimed and exercised an exclusive privilege for thirty years, in the face of the General Assembly, who had at all times the power of revoking the grant, if an improper use were made of it, ought to have been submitted to the jury as a contemporaneous exposition of the grant. *Shep. Touch.* 89. *n.* [1]. *The Attorney-General* v. *Parker,* 3 *Atk.* 577.

*R. M. Sherman* and *Denison,* contra, contended, 1. That *Hall* and *Brown,* the grantees, were tenants at will of a franchise, a species of incorporeal hereditament, incapable of being assigned, and which was to terminate with their lives. Though there may be an estate in fee in a franchise, yet it must be created by the words of the grant ; and no estate of inheritance can be created unless the grant be to the grantee *and his heirs.* It is an established rule in relation to grants by the public at the suit of the grantee, that such a grant shall not enure to any other intent than that which is precisely expressed in the grant ; and if the terms of the grant be doubtful, it is to be construed most favourably for the public, and against the grantee. 4 *Cruise's Dig.* 567. In the grant in question there are no words of inheritance ; none to make it assignable even during the life of the grantees ; and the franchise is to continue only " during the pleasure of the

General Assembly." The grant was therefore *personal* ; and the grantees were *tenants at will.*

2. To lay a foundation for recovery, the plaintiff must shew that the estate is in some body. It is not in the original grantees ; for they are dead. It is not in their heirs or personal representatives ; because the estate of a tenant at will is determined by his death. Nor is it in the plaintiff as assignee of the original grantees ; first, because an estate at will is not assignable even by the tenant in his life-time ; secondly, as it terminates with the death of the tenant, his personal representatives have no interest in it, and can make no assignment of it ; thirdly, as incorporeal hereditaments lie in grant, they can be conveyed only *by deed* ; fourthly, the administrators could not sell without an order of probate ; fifthly, there has been no conveyance whatever from *Hall* or his representatives.

3. The facts relied on as a contemporaneous exposition of the grant are only these ; that the original grantees in the first place, and the plaintiff afterwards, have run a line of stages on a part of this road for a considerable length of time, and that no one else has thought proper to run another line on the same road. From these facts no exclusive privilege can be presumed. But if it could, it would not answer the plaintiff's purpose. This is an action for the penalty. Now, admitting that a grant of an exclusive privilege might be presumed from long usage ; yet this, at most, would only entitle the party to his action on the case for a disturbance ; it would give him no right to the penalty.

SWIFT, Ch. J. This grant is an incorporeal hereditament in the nature of a franchise. To render it assignable, or descendible to heirs, it was necessary that it should extend to heirs and assigns. No such words are used in the grant. It did not, of course, descend to the heirs of the grantees ; nor had they any power to assign it. It is evident that the legislature intended a personal grant, and that it terminated at their death.

The prohibitory clause in the resolve was intended to secure to the grantees the benefit of the grant, and could not operate after that had ceased ; for it would be a strange construction to say that the legislature intended to prohibit

all persons except the grantees from running a stage on the road in question after the right of the grantees had expired.

It has been urged for the plaintiff, that contemporaneous usage and the exercise of the privilege of the grant from its origin to the present time, ought to have been submitted as evidence to the jury in connexion with the grant, to shew it to be existing. But the grant having terminated at the death of the grantees, the plaintiff could have no right under it. Still he had a right to run his stage on the road in question in common with all the citizens of the state ; and the use of a public highway in such manner as all are entitled to use it, can never furnish presumptive evidence of the existence of a grant, or of an exclusive right.

No new trial ought to be granted.

In this opinion the other Judges severally concurred.

New trial not to be granted.