*Fairfield,*
June, 1828.

Munson and another *against* Baldwin and others :

### IN ERROR.

The right of taking fish in *Ousatonic* river, between the mouth and *Leaven-worth's* ferry, under the 8th section of the act relating to Fisheries, is a personal and unassignable privilege in those who acquired it, by clearing and using the fishing-place, and is limited, in duration, to the enjoyment of it, by the same persons.

Therefore, where *A.* and *B.*, having acquired a right of taking fish, under the statute, by clearing and using a fishing-place, executed a writing, not under seal, by which, for a valuable consideration, they acquitted such fishing-place to *C.* ; it was held, in an action brought by *D.*, claiming under *C.*, against *E.* for a disturbance, that such writing was invalid, as a licence, assignment or transfer of any kind, and consequently, was inadmissible as evidence of title in *C.*

This was an action of trespass, brought by *Baldwin* and others against *Joseph B. Munson* and *Eli Beard,* for entering the fishing-place of the plaintiffs between the mouth of the *Ousatonic* river and *Leavenworth's* ferry, and taking fish.

On the trial before *Hezekiah Marks,* Esq., a justice of the peace, to whom the writ was returned, it appeared, that the fishing-place in question was originally cleared and used, by *John Ford* and others ; and that it had been constantly occupied successively by *Ford* and others, by *Wolcott Hurd* and *Charles F. Van Ostrand* and by the plaintiffs. The plaintiffs claimed title to a part of this fishing-place, by virtue of conveyances derived from *Ford* and others, and from *Hurd* and *Van Ostrand.* To shew the title of *Hurd* and *Van Ostrand,* the plaintiffs offered and read in evidence a writing, not under seal, dated the 3rd of *June,* 1800, by which *Ford* and others, for the consideration of fifty dollars, acquit to *Hurd* and *Van Ostrand* the fishing-place, boat and seine. To the admission of this evidence the defendants objected ; but the court overruled the objection and admitted it. The plaintiffs recovered judgment. The defendants thereupon filed a bill of exceptions, and brought a writ of error in the superior court ; which was reserved for the advice of this court.

*Sherman* and *Bissell,* for the plaintiffs in error, contended, 1. That the right in question was given, by the statute, (*a*) to those *personally,* who cleared the fishing-places, and was not trans-

(*a*) *Stat.* 229. *tit.* 35. *s.* 8. enacted in *January,* 1783.

ferable ; and consequently, that no title passed, or could pass, *Fairfield,* from *Ford* and others to *Hurd* and *Van Ostrand. Nichols* v. June, 1828. *Gates* & al. 1 *Conn. Rep.* 318.    A grant of this description is Munson not to enure to any greater extent than that which is precisely *v.* expressed in the grant ; and if the terms of the grant be doubt- Baldwin. ful, it is to be construed most favourably for the public, and against the grantee.    4 *Cruise's Dig.* 567.    The reason is, that such grant is in derogation of common right.    Between indi-viduals this grant would have created a mere estate at will. Now, what will terminate an estate at will?    An *alienation* will terminate it.    The writing given in evidence, then, so far from establishing the title of the plaintiffs, through *Hurd* and *Van Ostrand*, shewed an extinction of the right.

2. That admitting the right to be transferable, the writing in question was inadmissible for any purpose.    First, this being an incorporeal hereditament lying in grant, it could be convey-ed by *deed* only.    Secondly, it did not tend to shew a *licence* to act under the grantees.    The grantees might, undoubtedly, exercise their right by their servants ; but then, if the servants were interrupted, they would have no right of action : the grantees alone could sue.    Thirdly, it did not tend to prove the fact of a continued occupancy.    It furnished no evidence of this fact, it will be conceded, except so far as it shewed a transfer of the right.    This point, then, is resolvable into the question, whether the writing conveyed any right ;—a ques-tion, which has been already considered.

*N. Smith,* for the defendants in error, insisted, 1. That this grant established the grantees in the right, so long as they used it, by themselves, or by others, whom they put in under them. The legislature did not intend, that the grantees should always take fish with their own hands.    If they may put in others for a day or a month, may they not for an indefinite period ?    The object of the legislature in limiting the grant to the use speci-fied, is accomplished, in the latter case, as well as in the former. It is only when the grantees *abandon* their exclusive right, that it becomes common.    But if a man assigns or transfers a right, he does not thereby abandon it.    *Ford* and others, who paid a consideration for their grant, have kept up their right, by put-ting in *Hurd* and *Van Ostrand* under them.

2. That if the writing did not of itself convey a right, it was

*Fairfield,*
June. 1828.

Munson
*v.*
Baldwin.

not of course to be rejected    The bill of exceptions does not profess to bring up the whole case.   It states, however, that *Ford* and his associates cleared the fishing-place ; that it had been successively occupied by them, by *Hurd* and *Van Ostrand,* and by the plaintiffs ; and that the plaintiffs are in possession.   Now, the plaintiffs want to shew, that they are in *lawfully ;* and the writing shews *how* they came in—*viz.* by permission of *Ford* and his associates ; in other words, it shews the nature and character of the plaintiffs' possession.   It is also proper evidence, as far as it goes, to shew a *continued occupancy ;* and it is not to be excluded, because it does not prove the whole of this part of the case.

Hosmer, Ch. J.   Whether the writing offered in evidence by the plaintiffs below, was admissible, is the question now to be determined.

By the statute for encouraging and regulating Fisheries, it is enacted : " When any person or persons have been at the expence of clearing any fishing place or places in *Ousatonic* river, between the mouth thereof and *Leavenworth's* ferry, and have constantly used the same for taking fish, in the season thereof ; he or they shall be established in the full enjoyment thereof, *so long as he or they continue to use the same for the purpose of fishing,* in the proper season, and shall not be liable to any action for damages below high-water mark." *Stat.* 229. *tit.* Fisheries. *s.* 8.

In construction of this statute, the plaintiffs in the action of trespass, insist, that the provision that the use and enjoyment shall be co-extensive, extends to those only, who have occupied a fishing-place, and then abandoned it,—in which event their right is extinguished ; but that they are not prohibited, by the law, from selling their fishing-place, or from giving to others a right to use it for their advantage.

On the other hand, the defendants contend, that the statute does not authorize the transfer of title, in any manner ; that the right, by virtue of clearing, is strictly *personal ;* and that a deed or licence to others, to use the fishing-place as their own, is an abandonment and forfeiture of the grantor's title.

It was within the competency of the legislature to give to the persons clearing and occupying a fishing-place such a title, as was thought expedient ; and the popular meaning of a plain expression, shows, with infallible certainty, what interest they

acquired.  The court cannot go beyond this principle ; for in *Fairfield,* all public grants or licences, the construction is limited, by the June, 1828. precise expression.

The phrase applied to those who clear and occupy a fishing-place in *Ousatonic* river, that they shall enjoy it, " so long as *they* continue *to use* the same, for the purpose of fishing," is so plain and unequivocal, as to admit of one construction only. *They*—*i. e.* those who clear and occupy—are invested with title, so long as they *use* the fishing-place.  By the word " use," the right of the occupier is co-extensive with his customary enjoyment of the fishery ; and stops at this point.  The estate is merely a *personal* privilege, and not a transferable property. There are too many established analogies to render this construction questionable.  There is a qualification or condition annexed to the right, inseparable from its continuance.  To acquire and preserve the privilege, a person must *clear* a fishing-place ; and *constantly use* it ; and then his right continues *so long as he continues the use.*  His right is qualified like that of a person who is invested with a base fee ; *i. e.* who has an estate so long as he is tenant of a certain manor ; or like that of one who has licence to do any act personally; or like that of a widow, who holds an estate, so long as she remains single.  It is a transient property, such as all property was at the earliest stage of society, when the actual use and right of using were co-extensive, and the right of possession continued for the same time only that the act of possession lasted.  The unassignable licence to *Tallmadge Hall* and *Jacob Brown,* was of the same nature, except that its termination was made to depend on the pleasure of the General Assembly.  *Nichols* v. *Gates* & al. 1 *Conn. Rep.* 318.  The right of *Ford* and others, like that of *Hall* and *Brown,* was an incorporeal hereditament in the nature of a franchise, merely personal, with this difference, that it was forfeited by non-user.

From this view of the law, it clearly results, that *Ford* and others could not convey any title to the fishing-place, by sale or licence, or in any other manner.  The writing to *Hurd* and *Van Ostrand* was on valuable consideration, and intended to convey to them an interest in the fishing-place.  As a grant, it was void.  Incorporeal inheritances or franchises are said to lie in grant, and cannot pass without deed.  2 *Roll. Abr.* 62. *Co. Litt.* 169.  At the same time, notwithstanding the form of the instrument, if a licence were valid, I would construe the

*Fairfield,*
June, 1828.

Munson
*v*
Baldwin.

writing as comprising one. All deeds and writings should operate according to the intention of the parties, if by law they may; and if not operative in one form, they must operate in that, which by law will effectuate their intention. *Goodtitle* d. *Edwards* v. *Bailey, Cowp.* 600. *Shep. Touch.* 82. Thus, a deed intended for a release, may amount to a grant of the reversion, an attornment or a surrender *ut res magis valeat.* But a licence, assignment or transfer of any kind, in this case, is equally invalid as a deed, purporting to convey the entire property.

It has been argued for the plaintiffs below, that the writing, if of no legal avail, was admissible as evidence to prove certain essential facts in the case. The principle implied is not disputed; but there is no point of controversy on which it has a bearing. The commencement of the occupancy is not in question; nor the intention to occupy as early as the year 1800; nor the clearing; nor the actual occupancy since. It was admitted, that *Ford* and others cleared the fishing-place, and occupied until they attempted to convey their right to *Hurd* and *Van Ostrand;* and that the " fishing-place had been constantly occupied successively by *Ford* and others, by *Hurd* and *Van Ostrand,* and by the plaintiffs." Then, as the bill of exceptions declares, " to shew the title of said *Wolcott Hurd* and the said *Charles F. Van Ostrand,* the plaintiffs offered and read in evidence a certain writing." It is unquestionably clear, that the evidence ought not to have been received; and that the determination of the court admitting it, was erroneous.

The other Judges were of the same opinion, except BRAINARD, J. who was absent.

Judgment to be reversed.